**COCOTOS STEAMSHIP OF PANAMA, S.A., Libellant,**

v.

**SOCIEDAD MARITIMA VICTORIA S.A. PANAMA, George J. Stathos, Maria Trading Corporation of Panama and the Gallie Corporation, Respondents.**

United States District Court
S. D. New York.
Nov. 26, 1956.

Haight, Gardner, Poor & Havens, New York City, for libellant.

Pyne, Brush, Smith & Michelsen, New York City, for George J. Stathos.

Purdy, Lamb & Catoggio, New York City, for Maria Trading Corp. and others.

SUGARMAN, District Judge.

On July 10, 1956 libelant filed a libel against Sociedad Maritima Victoria S. A. Panama (Victoria), George J. Stathos (Stathos), Maria Trading Corporation of Panama (Maria) and The Gallie Corporation (Galli) for breach of a charterparty. It contains a clause for foreign attachment of the 'goods, chattels, credits and effects of each respondent in the hands of respondents Gallie and Maria and in the hands of William F. Murphy, Sr. (Murphy, Sr.) and/or Wil-

liam F. Murphy, Jr. (Murphy, Jr.) as garnishees.

The clerk issued process including:

### A

Process in personam with clause of foreign attachment on July 10, 1956 against respondents Victoria and Stathos and garnishees Gallie, Maria, Murphy, Sr. and Murphy, Jr.

The Marshal's certificate recites his inability "to find the within-named respondent in my District" and certifies attachment of "the credits and effects to the amount sued for in the hands of" Gallie and Murphy, Sr. on July 11, 1956. He also recites without date his inability to find Murphy, Jr. and Maria in the district.

### B

Process in personam with clause of foreign attachment on July 23, 1956 against respondents Victoria and Stathos and garnishee Maria.

The Marshal's certificate recites his inability "to find the within-named respondents in my District" and certifies attachment of "the credits and effects to the amount sued for in the hands of" Maria on July 24, 1956 by exhibition of the process to and leaving a copy thereof with "Mr. Lamb—partner of firm of Purdy, Lamb and Catoggio".

### C

Process in personam with clause of foreign attachment on July 10, 1956 against respondent Maria and garnishees Gallie, Murphy, Sr. and/or Murphy, Jr.

The Marshal's certificate recites his inability "to find the within-named respondents in my District" and certifies attachment of "the credits and effects to the amount sued for in the hands of" Gallie and Murphy, Sr. on July 11, 1956. He also recites without date his inability to find Murphy, Jr. in the district.

Maria, Gallie and Stathos appeared generally on July 23, 1956.

### The Stathos Motion.

Stathos now moves (Motion No. 123) for "entry of an order pursuant to Rule 21 of the Admiralty Rules of the United States District Court for the Southern District of New York, vacating and setting aside the foreign attachments made by libellant of credits and effects to the account of respondent" Stathos in the hands of Gallie and Maria, as garnishees.

Thus the attachments denominated A and B herein are challenged by Stathos.

■ Inasmuch as Stathos appeared in the suit on July 23, 1956, the process with clause of foreign attachment dated July 23, 1956 and executed on July 24, 1956, (denominated B above) insofar as it attaches property of Stathos is quashed.[1]

■ As to the attachment hereinabove denominated A, in order for libellant to be required "to show cause instanter why the * * * attachment should not be vacated" Stathos must, at the outset, submit "evidence showing * * * improper practice or a manifest want of equity on" libellant's part.[2] From the papers supporting his motion all that appears is that Stathos—

a) was born in New York City;

b) lives in Flushing, Queens (outside this district);

c) has a telephone listing in Queens;

d) maintains, and for 19 years has maintained "an office and place of business at 15 Whitehall Street, New York County, (within this district) under the name of Pelagic Co. Ltd., of which corporation" he is president;

e) was at that place of business every business day from July 10th to August 6, 1956.

It further appears from said moving papers that—

f) when the respondent Gallie and the garnishee Murphy, Sr. were served, no inquiry was made by the Marshal as to Stathos' whereabouts;

1. 2 Benedict on Admiralty, Sixth Edit. 352.

2. S.D.N.Y. Admiralty Rule 21.

g) in the negotiations for the charterparty, which is the subject of this suit, Stathos conferred with Bauer, the president of the libelant's "agent and chief negotiator" at Bauer's office;

h) Bauer telephoned Stathos at his home in Flushing, Queens, and at his "place of business";

i) during the negotiations Stathos gave Bauer his business card "which is the business card of Pelagic Co. Ltd.".

Accepting all of these assertions as true and ignoring the denials thereof contained in the answering affidavits, in the light of the undenied absence of any listing in the Manhattan telephone directory for Stathos and the absence of his name from the building directory and entrance door to the office of Pelagic Co. Ltd., it cannot be said that Stathos has shown the requisite improper practice or manifest want of equity on libelant's part required by the rule.

The authorities [3] offered by Stathos in support of his motion are inapposite. In the Provost case it appears that although there was a public record of the place of residence of the respondent within the district, the Marshal did not attempt to find respondent there before attaching her tug which was more conveniently at hand. In the Valmar case it appears that respondent personally appeared at the Marshal's office the day before the libel was filed, made known his presence in the district and left a letter stating where and how the Marshal could serve him personally when the process arrived in the Marshal's hands for execution. The facts at bar do not even remotely resemble those presented in the Provost and Valmar decisions.

Except as hereinabove otherwise indicated Stathos' Motion No. 123 is denied.

### The Maria Motion.

Proctors for respondent Maria move (Motion No. 183) "for an order vacating and setting aside the processes of foreign attachment heretofore issued herein and served upon" Gallie and Murphy, Sr., purportedly attaching the credits and effects of Maria.

Thus the attachment denominated C herein is challenged by Maria.

At the outset movant's proctors are reminded that citations in their brief should have been to the Federal Reporter system under the requirements of this district.[4]

Maria's brief states that the basis of its claim to the relief prayed for is twofold: (1) that Maria was at the time of the commencement of this action and at all times during the currency of process in this action present within this district and amenable to the service of a citation; (2) that the purported cause of action against Maria is not within the jurisdiction of this court.

As to the first ground, the short answer is that there remains undenied the assertions in the answering affidavits in this motion that—

a) Maria has no telephone directory listing;

b) Maria's name is absent from the building directory and office door of Gallie's office where it is alleged to maintain its office in Gallie's suite at 50 Broad Street;

c) when the deputy Marshal on July 11, 1956 served the citation in this suit addressed to Gallie by delivery thereof to Murphy, Sr. and inquired if Maria could then and there be served with a citation which the Marshal had available, Murphy, Sr. advised that such service could not be effected until the return of Murphy, Jr. on July 25—concealing that which he admits in his affidavit of July 27, 1956; that he was, on July 11th, the secretary of Maria.

In the light of these uncontradicted assertions it ill behooves Maria to now attempt to escape the natural consequences of its omissions and silence.

3. Provost v. Pidgeon, D.C.S.D.N.Y., 9 F. 409; The Valmar, D.C.E.D.Pa., 38 F. Supp. 615.

4. Headnote Motion Calendar, N.Y.L.J.

There is nothing inconsistent in libelant's having procured the service on an attorney on July 24, of process in personam with clause of foreign attachment issued on July 23, 1956 against Maria as garnishee of Victoria and Stathos (see this opinion supra where Stathos' motion to quash that attachment [hereinabove denominated B] is granted).

■ That Bauer, president of Sea Carriers Inc. which represented libelant in earlier negotiations to purchase the vessel and in procuring the charter-party which is the subject of this suit, conducted those negotiations with Gallie and wrote to Maria c/o Gallie shows no more than that Gallie was Maria's agent in those dealings and falls far short of establishing what Maria contends i. e. that Bauer (and it will be assumed therefrom that libelant) knew of Maria's presence in this district. Nor does Maria's subsequent general appearance herein on July 23 impair the validity of the attachment made on July 11th.[5]

■ It has been suggested in the moving affidavit that the process is defective for lack of specification of the *res* attached. Where credits and effects in the hands of a garnishee are the subject of the attachment, a description thereof, as here—"credits or debts as may be due or owing to above named respondent"—is adequate.

All that the practice requires when the attachment issues against the "rights and credits of the debtor" is that there be "notice of the object of the proceeding to those who have either or both in their possession * * * [w]hen the service of the attachment is by notice, and not by actual levy upon the goods, it must necessarily be shown * * * [that] the garnishee * * * has been warned of the remedy which the process demands, and for what cause, and of the time and place he must appear before the court." [6] In every respect the process here met those requirements.

The second prong of Maria's attack upon the attachment (lack of this court's jurisdiction) is bottomed on three bases.

The first two address themselves to the first claim in the libel which seeks from Maria and others damages for breach of the charter-party. The third addresses itself to the second claim in the libel which seeks from Maria and others damages for combining and conspiring to cause Victoria "which did not in fact own the vessel" to enter into the charter-party with libelant "so that if the charter market should fall the vessel would be transferred to respondent Victoria and performance of the charter enforced, while if the market should rise libelant would be left with a claim against respondent Victoria which has few, if any, assets."

■ As to Maria's challenge to the first claim (breach of contract) it is argued that the libel should be dismissed because Victoria, which entered into the charter-party with libelant has not been served. No consideration thereof is necessary since Victoria has agreed to accept service upon the return of its officer to New York shortly. It is further argued that the claim for breach of the charter-party "involves merely a common law right of action for damages, if any exist, for failure to perform an executory contract." Keeping in mind that this is a libel *in personam* and that no lien is asserted against the vessel named in the charter-party, the contention urged by Maria was rejected as long ago as 1849.[7] There Judge Betts said "the jurisdiction of the court over contracts * * * evidenced by charter parties * * * has been so often considered by this court, and decided in favor of supporting it, that I do not consider it now an open question here or in the circuit court of this district * * *". Whereas that pronouncement has been favored in later decisions on the subject,[8] none has come

5. 2 Benedict on Admiralty, Sixth Edit. 352.

6. Smith v. Miln, D.C.S.D.N.Y., 22 Fed. Cas. pages 603, 605, No. 13,081.

7. Quirk v. Clinton, D.C.S.D.N.Y., 20 Fed. Cas. pages 146, 147, No. 11,518.

8. Oakes v. Richardson, D.C.D.Mass., 18 Fed.Cas. page 512, No. 10,390; Mar-

to the court's attention departing from it. It is too firmly imbedded to permit reappraisal now.

The authority [9] offered by Maria is inapplicable, for there it was merely said that admiralty cannot enforce specific performance, an equitable title or a lien against a vessel to secure purchase money advanced. No question of the hiring of the vessel for maritime purposes under a charter-party was involved.

Maria's attack upon libelant's first claim is accordingly futile and the attachment of its credits in the hands of other respondents and garnishees must stand.

Although it thus becomes unnecessary to consider the third prong of Maria's attack upon the attachment (that this court lacks jurisdiction of the second claim, i. e. for conspiracy to breach the charter-party) it is observed *obiter* that Maria's position here is also unstable.[10]

There Judge Learned Hand stated, 276 F. at page 423, "this libel was then amended to include allegations that the Polish Company had persuaded the Acme Company to break its contract, which was laid as an independent maritime tort.". In deciding that there was "a maritime tort over which the admiralty will take jurisdiction" Judge Hand held at page 433 "[o]bviously if that contract was maritime enough in its character to base a libel upon it in contract, the injury resulting from the wrongful act on shore was as maritime, because it was the same thing.".

Maria's motion No. 183 is denied.

In addition to the foregoing motions (No. 123 by Stathos and No. 183 by Maria) the garnishee, Murphy, Sr. (Motion No. 94) and respondents Maria and Gallie (Motion No. 96) "except to the interrogatories attached to the libel herein stated to be 'interrogatories propounded to all such persons as may be served herein with process in personam with clause of foreign attachment', on the ground that said interrogatories are incompetent, irrelevant and immaterial and call for the disclosure of confidential information as to which libellant has no right except in respect of the respondent" Victoria.

In support of the exceptions, it is argued "1. That said interrogatories are improper, incompetent, irrelevant and immaterial in respect of respondents Maria * * * and * * * Stathos because said respondents at the time of the filing of the libel herein and during the currency of process thereunder were present within this District and amenable to the service of simple process in personam by citation, and therefore were not subject to the attachment of their goods, credits and effects. 2. That the interrogatories are improper in that they are too general and far reaching in scope and seek to inquire into business relationships between the respondents and the garnishees which are not the concern of the libellant and as to which libellant is not entitled to information."

The first ground is disposed of by the court's ruling on companion motions No. 123 and No. 183 and is overruled.

As to the second ground of exception no facts are presented on which the court could find merit in movants' contention that they call for the disclosure of confidential information. Libellant's interrogatories appear to be reasonable under the circumstances herein presented. They seek information as to the credits and effects of each of respondents in the hands of the others and the garnishees. They are competent, relevant

shall v. Pierrez, D.C.E.D.N.Y., 16 Fed. Cas. page 847, No. 9,130; Scott v. The Ira Chaffee, D.C.E.D.Mich., 2 F. 401, at page 407; The Monte A, D.C.S.D.N.Y., 12 F. 331, at page 336; Paterson v. Dakin, D.C.S.D.Ala., 31 F. 682, at page 684; Graham v. Oregon R. & N. Co.,

D.C.S.D.N.Y., 135 F. 608, at page 611; cf. Archawski v. Hanioti, 350 U.S. 532, 76 S.Ct. 617.

9. Hirsch v. The San Pablo, D.C.S.D.Fla., 81 F.Supp. 292.

10. The Poznan, D.C.S.D.N.Y., 276 F. 418.

and material. The second ground of exception is also overruled.

Motions No. 94 and No. 96 are denied.

This decision is the court's order disposing of motions No. 123, No. 183, No. 94 and No. 96.