PROLERIDE TRANSPORT SYSTEMS, INC., et al., Plaintiffs,

v.

UNION CARBIDE CORPORATION et al., Defendants.

Civ. A. No. 79–2555–C.

United States District Court, D. Massachusetts.

Sept. 26, 1980.

Katz & Horvitz, Morris D. Katz, Boston, Mass., for plaintiffs.

Harold Hestnes, David S. Mortensen, Hale & Dorr, Boston, Mass., for intervenor Distrigas.

Gerald May, Rich, May, Bilodeau & Flaherty, Boston, Mass., for Union Carbide Corp.

Robert C. Gerald, Bowker, Elmes, Perkins, Mecsas & Gerrard, Boston, Mass., for Union Petroleum Corp.

## MEMORANDUM

CAFFREY, Chief Judge.

This is a civil action seeking damages and injunctive relief on the basis of an assignment of interest in a parcel of land in Everett, Massachusetts, which includes rights to the use of a wharf on the Mystic River. The matter is before the Court and oral argument has been heard on defendant's motion to dismiss for lack of subject

matter jurisdiction. Plaintiffs assert admiralty jurisdiction within the meaning of Rule 9(h), Fed.R.Civ.P. in their complaint and in their memorandum in opposition to the motion to dismiss. I rule that this complaint does not allege a cause of action within the admiralty jurisdiction of this Court, and accordingly it follows that the case should be dismissed under Rule 12(b)(1), Fed.R.Civ.P.

On April 14, 1966, plaintiffs Proleride Transport Systems, Inc. (Proleride) and Hugo Neu Steel Products, Inc. (Neu), operating as a joint venture, purchased from Eastern Marine a parcel of land, which includes a wharf on the Mystic River. Eastern Marine, which is not a party to this action, reserved certain rights to the use of the wharf. On July 1, 1966 Eastern Marine assigned those rights to defendant Union Carbide Corporation (Union Carbide) as part of a lease of property adjacent to the Proleride and Neu parcel. On February 17, 1978 Union Carbide assigned its interest in this property, including the rights to use of the wharf, to defendant Union Petroleum Corporation (also known as Belcher Corp.). Plaintiffs allege that as of the February 17, 1978 conveyance, defendants' use of the wharf constitutes trespass because the assignments were made without the written consent of the joint venture, allegedly required by the April, 1966 agreement between plaintiffs and Eastern Marine, and the use of the wharf exceeds the limited rights permitted in the lease from Eastern Marine to defendant Union Carbide.

■ Plaintiffs assert jurisdiction in admiralty under 28 U.S.C. § 1333, alleging that the leases and assignments at issue relate sufficiently to maritime trade and commerce to come within admiralty jurisdiction. Traditionally the crucial factor determining whether or not admiralty jurisdiction exists in tort cases is the locality where the tort is committed; if the injury occurs on navigable waters, admiralty jurisdiction does attach. The "extension of land" doctrine denied admiralty jurisdiction to injuries occurring on piers, docks and bridges which, although they extend into navigable waters, were nonetheless considered so integrated into the mainland that they were treated as part of it. Clearly the trespass alleged by plaintiffs occurred on such an extension of land. This case warrants further analysis, however, because this Circuit has abandoned a strict locality rule, extending jurisdiction to certain torts "which have 'no maritime locality,' but have an intimate 'relationship to maritime service, commerce or navigation'." Carroll v. Protection Insurance Co., 512 F.2d 4, 8 (1st Cir. 1975); Pino v. Protection Maritime Insurance Co., 454 F.Supp. 210 (D.Mass.1978). Such an exception is not warranted in this case.

■ The subject matter of this case differs sufficiently from the Carroll and Pino cases to dictate a different result. Those cases involved interference with contractual relations between seamen and shipowners. It would have been anomalous to apply the traditional test of the location of the tort, since the test for admiralty jurisdiction over a contract dispute focuses on the subject matter of the contract, rather than the location. Seamen's employment contracts are central to maritime relationships and clearly lie within admiralty jurisdiction. This complaint, however, alleges injuries arising out of an assignment of a lease for realty, which includes rights to use of a wharf. "It is clear on the authorities that a lease of land adjoining a wharf, and even under some circumstances a lease of a wharf, is not a maritime contract." Transmarine Corp. v. Fore River Coal Co., 28 F.2d 624, 625 (D.Mass.1928).

Plaintiffs allege that the assignments and leases at issue constitute wharfage agreements, which give rise to admiralty jurisdiction under the subject matter test for jurisdiction. Ex Parte Easton, 95 U.S. 69, 77, 24 L.Ed. 373 (1877), Bird v. S.S. Fortune, 232 F.Supp. 690 (D.Mass.1964). The confusion caused by the "often close analogy between contracts for wharfage and agreements to lease real property" has been noted before. 7A Moore's Federal Practice ¶ 230 [4.–4] at 2824. In The James T. Furber, 157 F. 126 (D.Me.1907) an agreement leasing "the privilege of running a line of steamers from

the wharf . . . for a term of four months" was held to be non–maritime even though the lease was to a vessel. The following factors were critical: the wharfage rights were not limited to one vessel and no one vessel was named in the lease, the rent was payable whether or not the wharf was used, the compensation was based on the value of the location rather than the size or tonnage of the vessel, and the contract was in the common form of real estate leases, including distinctive real estate covenants. All of these factors are present in this case with regard to the lease and assignment of rights to the wharf on the Mystic River. The agreements at issue therefore cannot be characterized as maritime.

■ Critics of the *Furber* decision allege that these factors distract from the essential question of the maritime character of the transactions. While a maritime nexus is necessary, it may not be sufficient to invoke admiralty jurisdiction. Obviously there is a genuinely salty flavor to contracts to build or purchase vessels, to procure cargo insurance, and to service vessels temporarily out of navigation; yet these transactions do not invoke admiralty jurisdiction. Gilmore & Black, The Law of Admiralty 26–27 (2d ed. 1975).

■ Moreover, it is "well settled that a contract, in order to come within the admiralty jurisdiction, must be wholly maritime." *United Fruit Co. v. United States Shipping Board Merchant Fleet Corp.*, 42 F.2d 222, 224 (D.Mass.1930). The "wholly maritime" requirement refers to the "primary tenor" of the contract. 7A Moore ¶ 270, p. 3142. Since the essence of this contract is a lease of real estate, precedent dictates that admiralty jurisdiction does not attach. Of course even a non–maritime contract may "give rise to certain obligations and duties to a vessel which would render the contracting party liable in tort for his negligent failure to fulfill these obligations." *Transmarine Corp. v. Fore River Coal Co., supra* at 625. On its face this complaint does not allege a maritime tort arising out of such contractual duties; in fact, there is no allegation of a contract between plaintiffs and defendants.

Although it is certainly true that the lines of admiralty jurisdiction are not ship–shape, extending jurisdiction to this case would not further the purposes of the original limited grant of admiralty jurisdiction. The initial grant served not only to further maritime commerce, but also to protect litigants by providing a uniform source of law to vessels traveling in interstate commerce and by assuring an adequate forum. The interpretation of an assignment that is in its essence a lease of real estate is a characteristically local matter, appropriately relegated to state court jurisdiction.

Order accordingly.