John W. MILLER

v.

PENOBSCOT BAY MEDICAL ASSOCIATES d/b/a Martin's Point Health Care Center and Robert E. Caven.

Civ. No. 93–90–P–C.

United States District Court,
D. Maine.

Nov. 1, 1993.

**32**

with contractual relations (Count VI); breach of a third-party beneficiary contract (Count VII); and violation of admiralty and maritime law (Count X). Currently pending before the Court is Defendants' Motion to Dismiss claiming that the Court lacks jurisdiction over the subject matter. Fed.R.Civ.P. 12(b)(1).

To resolve Defendants' Motion to Dismiss, the Court must accept as true all factual allegations in the Complaint, construe them in favor of Plaintiff, and decide whether, as a matter of law, Plaintiff could prove any set of facts which would entitle him to relief. *See Roeder v. Alpha Industries, Inc.*, 814 F.2d 22, 25 (1st Cir.1987); *Gott v. Simpson*, 745 F.Supp. 765, 768 (D.Me.1990).

Mark L. Randall, William A. Fogel, Daniel G. Lilley Law Offices, Portland, ME, for plaintiff.

Geoffrey K. Cummings, Deborah Pope, Prti, Flaherty, Beliveau and Pachios, Portland, ME, for defendants.

*MEMORANDUM OF DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS*

GENE CARTER, Chief Judge.

This action was instituted by Plaintiff John W. Miller, against Defendants Texaco, Inc., Texaco Marine Services, Inc., Texaco Refining and Marketing, Inc. (hereinafter jointly "Texaco"), Penobscot Bay Medical Associates d/b/a Martin's Point Health Care Center, and Dr. Robert E. Caven, alleging various causes of action arising out of the termination of Plaintiff's employment by Texaco. The Texaco Defendants recently reached a settlement with Plaintiff. Four counts remain against Defendants Martin's Point and Dr. Caven: defamation (Count IV); interference

## I. FACTS

Prior to March 1991, Plaintiff held a Master's position on a ship under the management and control of Texaco. In March 1991, results of a random drug test showed Plaintiff's body to have contained trace amounts of marijuana. Plaintiff then entered into a course of treatment administered by Defendant Texaco through its Substance Abuse Program. In March 1992, Plaintiff presented himself at the Portland, Maine, facility of Martin's Point Care Center for a physical examination. Martin's Point had a contract with Defendant Texaco to provide certain examinations and testing services to individuals directed to Martin's Point by Texaco. Plaintiff was examined at Martin's Point by Dr. Robert E. Caven. Plaintiff alleges that his termination was based on an erroneous report of a physical examination performed on him by Defendant Dr. Caven.

This action was originally brought in state court and subsequently removed by the Texaco Defendants. At the time of removal, subject matter jurisdiction was based on 29 U.S.C. § 185 (federal labor-management statute).[1] Plaintiff filed a Motion to Amend

---

1. The Court notes that there has been some confusion on the part of both parties as well as the Court regarding the basis for jurisdiction in this case. After removing the case under a federal labor law statute, Defendant Texaco raised admiralty law as another basis for subject matter jurisdiction in its Amended Answer. Amended Answer of Defendants Texaco, Inc., Texaco Marine Services, Inc., and Texaco Refining and Marketing, Inc. (Docket No. 14) Fourteenth Affirmative Defense. This alternative ground for jurisdiction was noted on the Court's modified scheduling order to have been alleged by Texaco. Joint Amended Scheduling Order (Docket No.

the Complaint which was dismissed as moot after the Texaco Defendants settled their portion of the case. *See* Plaintiff's Motion to Amend Pleadings (Docket No. 17). Because Count X of the Amended Complaint alleges a cause of action based in admiralty against all Defendants, that Count should not have been dismissed for mootness.[2]

Without addressing the basis for removal, Defendants contend that "dismissal of the Texaco defendants eliminates any argument that admiralty jurisdiction exists."[3] Defendants Martin's Point and Caven's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Incorporated Memorandum of Law (Docket No. 30) at 5. Plaintiff responds that based on the facts, this case "is and was properly before this Court as a matter of admiralty and maritime jurisdiction" and, therefore, the Court should exercise its supplemental jurisdiction over the remaining common law claims. Plaintiff's Objection and Memorandum of Law to Defendants' Motion to Dismiss (Docket No. 45) at 1. The

Court will now determine whether the facts of this case state a cause of action in admiralty.

## II. Jurisdiction Based on an Admiralty Statute

■ Count X of Plaintiff's Amended Complaint alleges that "Defendants have violated one or more statutes within the scheme of the laws of the United States generally known as admiralty and maritime statutes."[4] Amended Complaint (Docket No. 17) ¶ 93. The only reference Plaintiff makes to an admiralty or maritime statute is 46 U.S.C. § 7101. Plaintiff's Objection and Memorandum of Law to Defendants' Motion to Dismiss (Docket No. 45) at 2. In discussing section 7101 Plaintiff states that

> as a result of his employment contract with Texaco [he] was required to appear for a medical exam at Martin's Point Health Center in Portland, Maine in part for a yearly physical examination pursuant to

16) ("Subject Matter Jurisdiction: (A) Removal, based upon federal question (by Defendant Texaco); (B) Defendant Texaco *contends* that an issue of maritime law controls subject matter jurisdiction"). The Court's first Scheduling Order lists the basis for jurisdiction as diversity of citizenship, Scheduling Order (Docket No. 13), while the report from final pretrial conference lists ERISA, 29 U.S.C. § 1001 *et seq.*, as the basis for subject matter jurisdiction.

2. The Court mistakenly dismissed all counts of the Amended Complaint relying on Plaintiff's heading on each count as against Texaco Defendants only. Plaintiff's Amended Complaint provides in part:

EIGHTH CAUSE OF ACTION
[WRONGFUL TERMINATION]
AGAINST TEXACO, INC., TEXACO MARINE AND TEXACO REFINING

. . . .

NINTH CAUSE OF ACTION
[NEGLIGENCE AGAINST TEXACO, INC.]

. . . .

TENTH CAUSE OF ACTION
[VIOLATION OF MARITIME AND ADMIRALTY LAWS AGAINST TEXACO, INC., TEXACO MARINE SERVICES, INC., AND TEXACO REFINING AND MARKETING, INC.]

. . . .

ELEVENTH CAUSE OF ACTION
FRAUD
[AGAINST ALL' TEXACO ENTITIES]

. . . .

3. The Court lacks subject matter jurisdiction based on diversity because the complete diversity

requirement is not fulfilled. *See Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). Diversity of citizenship, as between Plaintiff and Defendant Martin's Point, does not exist. Plaintiff is a resident of Ogunquit, Maine. Deposition of John W. Miller, Vol. I, p. 8. Defendant Martin's Point Health Care Center is a Maine Corporation. Complaint (Docket No. 1A).

4. Count X of the Amended Complaint alleges:

92. Plaintiff is informed and believes and thereupon alleges that the acts and omissions of all Defendants herein were specifically designed to prevent, or substantially certain to prevent Plaintiff from pursuing his chosen profession involving employment on the high seas and navigable waters within and outside the territories of the United States.
93. Based upon the factual allegations contained herein, and the foregoing allegation, Plaintiff is informed and *believes and thereupon alleges that each and all of the defendants have violated one or more statutes within the scheme of the laws of the United States generally known as admiralty and maritime statutes.*
94. The acts and omissions alleged herein proximately, legally and maliciously deprived Plaintiff of his opportunity to make a living as a master, and has served to relegate him to lesser positions with other companies in order to sustain his livelihood and mitigate his damages.

Amended Complaint (Docket No. 17) (emphasis added).

Department of Transportation regulations and pursuant to 46 U.S.C. § 7101 (Part E–Merchant Seaman's Licenses, Certificates and Documents, Chapter 71–Licenses and Certificates of Registry).

Plaintiff's Objection and Memorandum of Law to Defendants' Motion to Dismiss (Docket No. 45) at 2. The Court concludes that this case does not support a cause of action based on Defendants' violation of the statute.

Section 7101 provides in pertinent part: § 7101. Issuing and classifying licenses and certificates of registry

(a) Licenses and certificates of registry are established for individuals who are required to hold licenses or certificates under this subtitle [46 U.S.C. §§ 2101 *et seq.*].

. . . .

(c) The Secretary[5] may issue licenses in the following classes to applicants found qualified as to age, character, habits of life, experience, professional qualifications and physical fitness:

(1) masters, mates, and engineers.

(2) pilots.

(3) operators.

(4) radio officers.

. . . .

(e) An individual may be issued a license under subsection (c)(2) of this section only if the applicant—

(1) is at least 21 years of age;

(2) is of sound health and has no physical limitations that would hinder or prevent the performance of a pilot's duties;

(3) has a thorough physical examination each year while holding the license, except that this requirement does not apply to an individual who will serve as a pilot only on a vessel of less than 1,600 gross tons;

. . . .

*See* 46 U.S.C. § 7101. It has not been alleged that Plaintiff holds a pilot's license. The only license of which the Court is aware

which could conceivably require Plaintiff to submit to and pass a yearly physical examination under section 7101 is the Plaintiff's Master's license which could be endorsed to permit him to serve as a pilot in the specified navigable waters. *See* 46 U.S.C. § 7112 (license endorsement). There is no allegation of any such endorsement. Nevertheless, assuming Plaintiff holds a pilots license requiring a yearly physical examination, 46 U.S.C. § 7101(e)(3), it has not been alleged that he has been deprived of the use of his Coast Guard license because of the results of the physical examination performed by Dr. Caven at Martin's Point, resulting in the violation of section 7101. In fact, the Amended Complaint states that as a result of Defendants' acts or omissions, Plaintiff has been "relegate[d] . . . to lesser positions with other companies." Amended Complaint ¶ 94.

In the absence of any allegations providing that Defendants' acts or omissions resulted in Plaintiff's loss of his Master's license, the Court cannot exercise subject matter jurisdiction based on section 7101. Because Plaintiff does not claim that any other admiralty statute has been violated, the Court finds that subject matter jurisdiction based on an admiralty statute does not exist. Accordingly, Count X of the Amended Complaint will be dismissed.

### III. Jurisdiction Based on a Maritime Tort

#### A. Situs Test

■ Two of the remaining counts, defamation (Count IV) and interference with contractual relations (Count VI), are based in tort. The test for determining whether admiralty jurisdiction will attach in tort cases was definitively laid down by the Supreme Court in *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). *See also Drake v. Raymark Industries, Inc.*, 772 F.2d 1007 (1st Cir.1985), *cert. denied*, 476 U.S. 1126, 106 S.Ct. 1994, 90 L.Ed.2d 675 (1986). *Executive Jet* teaches that admiralty jurisdiction can be

---

**5.** The "Secretary" means the head of the Department in which the Coast Guard is operating. *See*

46 U.S.C. § 2101(34).

found in tort cases if the alleged wrong occurs on navigable waters (*situs* test)· and bears a significant relationship to traditional maritime activity (*nexus* test). Defendants correctly point out that Plaintiff fails to meet the *situs* prong from *Executive Jet.* However, neither party seems to be aware that the Court of Appeals for the First Circuit has established an alternative test for meeting the *situs* prong in cases where the tort of interference with contractual relations is alleged. *See Carroll v. Protection Maritime Insurance Co.,* 512 F.2d 4 (1st Cir.1975).

In *Carroll,* the plaintiffs, who were seaman and commercial fisherman, sued several insurers for tortious interference with the employment contracts they had entered. The plaintiffs alleged that the insurers "blacklisted" them because they had filed personal injury actions against previous employers. The defendants allegedly sent lists of personal injury claimants to plaintiffs' employers and prospective employers. As a result, the plaintiffs were denied employment.

In *Carroll* the First Circuit replaced the traditional *situs* test with an analysis of the "impact" of the alleged tort. The court concluded that the action for tortious interference fell within the district court's admiralty jurisdiction because the impact of the insurers' land-based action—providing the lists to the employers—"at least where existing employment was terminated, was felt in the operations of the affected vessels at sea." [6] *Carroll,* 512 F.2d at 8. *See also Pino v. Protection Maritime Insurance Co.,* 599 F.2d 10, 12–13 (1st Cir.1979) (refusing to overrule *Carroll* ). Similarly, in the case at bar, the termination of Plaintiff's employment contract was felt in the operations of the ship upon which he served.

### B. *Nexus Test*

The Court next considers the *nexus* prong of *Executive Jet.* Plaintiff contends that his claims "against Defendants Caven and Pe-

nobscot Bay Medical Associates (PMBA) are directly derivative and inseparable from his maritime employment with Texaco and must be considered under maritime law." Plaintiff's Objection and Memorandum of Law to Defendants' Motion to Dismiss at 1–2. Defendants counter that this case does not pass muster under the factors applicable to determining whether there exists a *nexus* to traditional admiralty concerns. *See Drake,* 772 F.2d at 1015 (criteria to be considered under the *nexus* approach are "the function and role of the parties, the types of vehicles and instrumentalities involved, the causation and type of injury, and traditional concepts of the role of admiralty"). After analyzing the *Drake* factors, Defendants conclude that the facts of this case do not relate to admiralty but, rather, to a claim for medical malpractice. Defendants Martin's Point and Caven's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Incorporated Memorandum of Law (Docket No. 40) at 8–9. The Court disagrees. In this case, the tort of interference with contractual relations is so interwoven with the maritime contract that it is a proper case for the Court to exercise its admiralty jurisdiction.

In determining whether a contract is within federal admiralty jurisdiction under 28 U.S.C. § 1333(1), the nature and subject matter of the contract at issue should be the crucial consideration. A contract for services between a seaman and a vessel owner is at the heart of maritime relationships. *Kossick v. United Fruit Co.,* 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961). Therefore, a suit for breach of such contract lies in admiralty.

In this case, however, it is unclear whether the tortious interference claim is based strictly on the employment contract itself or the Substance Abuse Agreement. The Complaint provides that there existed an employment contract between Plaintiff and Texaco. Complaint ¶¶ 28–29. The Complaint further

---

**6.** The *Carroll* court also stated:

[t]here is no apparent reason or policy for requiring a seaman who wishes to sue both his employer for breach and a third party who provoked the breach to proceed in different courts. Not only would that result in piecemeal, bifurcated litigation, but the admiralty goal of uniformity in dealing with maritime matters would be frustrated. Seamen's rights against those who tortiously interfered with their seagoing employment would vary from port to port or state to state.

*Carroll,* 512 F.2d at 6.

provides that during the course of the employment relationship, it became necessary for Plaintiff to comply with the terms and conditions of the Substance Abuse Agreement.[7] Complaint ¶ 30. Based on these allegations, the Court concludes that Plaintiff's employment was contingent on compliance with the Substance Abuse Agreement. Therefore, the Substance Abuse Agreement was incorporated into Plaintiff's contract for employment with Texaco. Whether the claim for interference with contractual relations is based on the Substance Abuse Agreement or the Plaintiff's employment contract with Texaco, the Court concludes that a maritime *nexus* is established. Accordingly, the Court finds that it has subject matter jurisdiction over the claim for interference with contractual relations.

### IV. Supplemental Jurisdiction

Given that the Court has subject matter jurisdiction over the claim for interference with contractual relations, the Court will exercise supplemental jurisdiction over the remaining claims for defamation and third-party beneficiary contract, both of which arise out of the same set of facts. *See* 28 U.S.C. § 1367.

Accordingly, it is *ORDERED* that Defendants' Motion to Dismiss be, and it is hereby, *GRANTED* on Count X of the Amended Complaint. It is *FURTHER ORDERED* that Defendants' Motion to Dismiss be, and it is hereby, *DENIED* on the claims for defa-

mation (Count IV), interference with contractual relations (Count VI), and third-party beneficiary contract (Count VII).

---

7. The Complaint states:

    28. By virtue of the conduct of Plaintiff and the conduct of TEXACO REFINING, and by operation of law, *there existed a contract between Plaintiff and TEXACO REFINING.*

    29. Provisions of this contract included, but were not limited to the Plaintiff agreeing to render services to TEXACO REFINING in exchange for the payment of a salary, and the conferring of fringe benefits consistent with Plaintiff's position as Master.

    30. *The evolution of the employer/employee relationship between TEXACO REFINING and the Plaintiff, including, but not limited to the compliance by the Plaintiff with the terms and conditions of the Substance Abuse Program* conferred upon the Plaintiff certain implied benefits, and burdened TEXACO REFINING to certain implied obligations concerning Plaintiff.

    31. The Plaintiff's benefit and Defendant TEXACO REFINING's obligations implied in fact, and by operation of law included, but were not limited to the following:

    a. That the Plaintiff, having subjected himself to the Substance Abuse Program would not be terminated, either from employment by TEXACO REFINING, nor [sic] from participation in the Substance Abuse Program except for good cause;

    b. That TEXACO REFINING, either itself, or through its agents, would not make a determination that good cause existed for Plaintiff's termination from employment, or from the Substance Abuse Program without due process and/or an opportunity to be heard; and

    c. That TEXACO REFINING, both for itself, and by its agents, would comply with the provisions of the Substance Abuse Program regarding Plaintiff's reintroduction into the TEXACO REFINING workforce.

Complaint ¶¶ 29–31 (emphasis added).