**Paul GUIDRY, Plaintiff–Appellant,**

v.

**John DURKIN, Defendant–Appellee.**

**No. 86–2200.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 11, 1987.

Decided Dec. 22, 1987.

Frederick John James, Oakland, Cal., for plaintiff-appellant.

Jeanne M. Franken, U.S. Dept. of Justice, San Francisco, Cal., for defendant-appellee.

Before NOONAN and O'SCANNLAIN, Circuit Judges, and TASHIMA,* District Judge.

O'SCANNLAIN, Circuit Judge:

We set sail on a voyage over the waters of the ancient law of admiralty, swept along by our need to deal with one seaman's claim that he was defamed by another in a telex message signaled from a Navy ship on the high seas. Following removal of this state court action to federal district court, the trial judge entered summary judgment against seaman Guidry on the ground of seaman Durkin's absolute immunity as a federal official. After weathering the storms of conflicting jurisdictional arguments, we conclude that safe harbor cannot be found to hear this complaint in either court.

## FACTS

Durkin was a civilian employed by the Department of the Navy ("Navy") as Chief Engineer on the United States Naval Ship *Passumpsic*, a public vessel of the United States. On October 1, 1984 the ship was at sea when Durkin received a telex message stating that Guidry, also a civilian employee of the Navy, would be assigned to the *Passumpsic* as Engine Utilityman.

In response to this news, Durkin drafted the following message and handed it to the telex operator on board the *Passumpsic* for transmission to shore:

1. Due to past previous working experiences Chf. Engr. requests reconsideration of placement of Mr. Paul Guidry vice Mr. Robert Warren as per ref (A).

2. ORIG, in need of a [sic] engine utility man who can handle their [sic] share of workload without constant directions and supervision as per MSCPA-CINST. 125123.3 CH–1.

Durkin's message was sent to and received by the Navy's Military Sealift Command, Pacific in Oakland, California.[1] Thereafter, the Master of the *Passumpsic* requested that Guidry not be assigned to his ship.

Guidry filed suit against Durkin in California state court on August 21, 1985, claiming the intentional tort of libel and general negligence.[2] Durkin, represented by attorneys for the United States, removed the state court action to federal district court pursuant to 28 U.S.C. § 1442(a)(1). Durkin then filed an answer to Guidry's complaint, raising the affirmative defenses of lack of subject matter jurisdiction and immunity from state and common law tort liability. Durkin subsequently filed motions to dismiss and for summary judgment under Fed.R.Civ.P. 12(b)(1) and 56(b).

The district court granted Durkin's motion for summary judgment and dismissed

---

* Honorable A. Wallace Tashima, United States District Judge, Central District of California, sitting by designation.

1. The parties dispute whether the message conveyed by Durkin to the telex operator for transmission to shore via telex was published first at sea or on land. At oral argument, Durkin's counsel pointed out that the message was read at sea by at least the telex operator. She further argued that the *Passumpsic*'s captain also read the allegedly libelous statement, and that it was received via telex by other vessels at sea.

2. Although Guidry and Durkin had apparently served together for a short time on another Navy vessel, Guidry claims not to have worked directly for or with Durkin prior to the transmission of the above message.

the complaint, finding that Durkin's actions fell within the outer perimeter of his duties and holding that, as a federal official, he was absolutely immune from tort liability for those actions. The question of the court's subject matter jurisdiction, however, does not appear to have been considered.

## STANDARD OF REVIEW

We review *de novo* a district court's entry of summary judgment, *see National Basketball Ass'n v. SDC Basketball Club, Inc.*, 815 F.2d 562, 565 (9th Cir.1987), *cert. pending*, but our initial inquiry here is with respect to jurisdiction. Questions of subject matter jurisdiction are also reviewed *de novo. Gerritsen v. de la Madrid Hurtado*, 819 F.2d 1511, 1515 (9th Cir.1987).

## DISCUSSION

We are confronted with the somewhat anomalous situation in which two conflicting and potentially mutually exclusive grounds for jurisdiction have been asserted by the parties. Neither side alleges diversity jurisdiction. Guidry argues that, despite his filing originally in state court, the district court acquired jurisdiction under 28 U.S.C. § 1442(a)(1) and properly kept the case. Durkin urges instead that, because Guidry's claims sound in admiralty under 28 U.S.C. § 1333(1), the state court lacked subject matter jurisdiction over this action and the district court acquired none upon removal.[3] We turn now to an examination of the merits of these arguments.

### I

Title 28 of the United States Code, section 1442(a), reads in relevant part:

---

**3.** While the U.S. Department of Justice defends the trial court's decision on the merits, its brief calls our attention to the jurisdictional problem.

**4.** Because 28 U.S.C. § 1442(a)(1) confers removal jurisdiction on the district courts in all situations in which federal officers can raise a colorable defense arising out of the exercise of their duties, *see Miller*, 793 F.2d at 1046, it avoids the extraordinarily difficult problem of ascertaining a basis for removability in those state court

---

A civil action ... commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending: (1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office....

▮ The purpose of this statute is to provide a federal forum, presumably free of whatever local prejudice might exist in a state court, in which federal officers may defend claims arising out of the performance of their duties. *Arizona v. Manypenny*, 451 U.S. 232, 241–42, 101 S.Ct. 1657, 1664–65, 68 L.Ed.2d 58 (1981); *Willingham v. Morgan*, 395 U.S. 402, 406–07, 89 S.Ct. 1813, 1815–16, 23 L.Ed.2d 396 (1969); *Nationwide Investors v. Miller*, 793 F.2d 1044, 1046 (9th Cir.1986) (per curiam). "[I]t is a purely derivative form of jurisdiction, neither enlarging nor contracting the rights of the parties." *Manypenny*, 451 U.S. at 242, 101 S.Ct. at 1664 (footnote omitted). Thus, the net effect of section 1442(a)(1) is to provide a federal officer with a federal forum in which the federal rules of procedure will be applied without changing the substantive law relevant to the plaintiff's claims. *See id.* at 241–42, 101 S.Ct. at 1664–65.

▮ However, because of the derivative nature of the jurisdiction conferred on the district court by this statute,[4] the federal court may not exercise jurisdiction over the removed action unless the state court initially had subject matter jurisdiction. *Id.* at 242 n. 17, 101 S.Ct. at 1665 n. 17. *Accord Miller*, 793 F.2d at 1048 (citing *Aminoil U.S.A., Inc. v. California Water Resources Control Bd.*, 674 F.2d 1227, 1232, 1237 (9th Cir.1982)). We turn, therefore, to

---

actions in which no federal officers are involved as defendants. *See* 14 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 3674 (2d ed. 1985). Of course, with the recent enactment of 28 U.S.C. § 1441(e), which eliminates the derivative nature of removal jurisdiction, this entire discussion is irrelevant to all such actions commenced on or after June 19, 1986. *See Wilson v. Bill Barry Enterprises, Inc.*, 822 F.2d 859, 861 n. 2 (9th Cir.1987).

an examination of Guidry's claims[5] to see whether, as argued by Durkin, they sound in admiralty, beyond state court subject matter jurisdiction.

## II

The scope and extent of the admiralty jurisdiction of the United States district courts is set forth at 28 U.S.C. § 1333(1), which reads as follows:

The district courts shall have original jurisdiction, exclusive of the courts of the States, of[ ] [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

The above language has been construed to mean that a plaintiff pursuing an *in personam* claim with a maritime flavor may generally elect to proceed in a state court capable of exercising personal jurisdiction over the parties under the "saving to suitors" clause above (*i.e.*, the state and federal courts exercise concurrent jurisdiction over such claims), whereas *in rem* actions involving maritime liens fall within the exclusive admiralty jurisdiction of the federal district courts. *See Madruga v. Superior Court*, 346 U.S. 556, 560, 74 S.Ct. 298, 300, 98 L.Ed. 290 (1954) ("Admiralty's jurisdiction is 'exclusive' only as to those maritime causes of action begun and carried on as proceedings *in rem*, that is, where a vessel or thing is itself treated as the offender and made the defendant by name or description in order to enforce a lien"); 1 E. Jhirad, A. Sann, B. Chase & M. Chynsky, Benedict on Admiralty §§ 123 & 124 (7th ed. 1985) ("Benedict"); 14 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 3672 (2d ed. 1985); G. Gilmore & C. Black, The Law of Admiralty § 1–13 (2d ed. 1975); D. Robertson, Admiralty and Federalism 135 (1970); Comment, "State Jurisdiction in the Maritime Realm," 16 Mercer L.Rev. 450, 456–57 (1965). *But see* 2 Benedict § 2 at 1–16 ("Where the tort occurs on the high seas, admiralty will have sole jurisdiction. . . ."),

*and LaMontagne v. Craig*, 817 F.2d 556, 557 (9th Cir.1987) (*per curiam* ) (admiralty jurisdiction would exist where tort of defamation occurred on high seas).

Before we can determine whether Guidry's claim falls within the original and exclusive admiralty jurisdiction of the federal district courts or concurrent state court jurisdiction by virtue of the "saving to suitors" clause, we must first answer the question whether Guidry's specific claim for tortious libel may be heard in admiralty at all.

■ Traditionally, admiralty jurisdiction extended only to torts that occurred on navigable waters, as distinguished from those occurring on land. *See generally* 2 Am.Jur.2d, *Admiralty* § 81 at 765; 2 Benedict § 2. However, the Supreme Court stated in *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454 (1972), that "the mere fact that the alleged wrong 'occurs' or 'is located' on or over navigable waters" is not sufficient to create a maritime tort; it is also required that "the wrong bear a significant relationship to traditional maritime activity." In this circuit, following *Executive Jet*, a claim falls within the federal court's admiralty jurisdiction if the actions complained of have (1) a maritime "situs"—a tort on or over navigable waters, and (2) a maritime "nexus" —a significant relationship to traditional maritime activity. *Solano v. Beilby*, 761 F.2d 1369, 1370 (9th Cir.1985).

## A. MARITIME SITUS

■ Under maritime common law, "[C]ourts have traditionally defined the locus of the tort as the place where the injury occurs." *Solano*, 761 F.2d at 1371. However, situs of a tortious injury depends, *inter alia*, on the type of tort alleged. Where it is clear that tortious injury occurs solely ashore, the federal courts are generally without admiralty jurisdiction. *See, e.g., Lamontagne v. Craig*, 632

---

**5.** For the reasons set forth below, all references to "claim," "claims," or "defamation claim" should be construed to encompass the grava-

men (including the libel and negligence claims) of Guidry's action against Durkin.

F.Supp. 706, 709 (N.D.Cal.1986) (admiralty jurisdiction does not extend to defamatory libel where, although written at sea, publication and corresponding injury occurred on land), *aff'd per curiam,* 817 F.2d 556 (9th Cir.1987). *See also Clinton v. Joshua Hendy Corp.,* 285 F.2d 199, 201–02 (9th Cir.1960) (admiralty jurisdiction not extended to tortious interference with contractual relations consummated on land) *and Clinton v. International Org. of Masters,* 254 F.2d 370, 372 (9th Cir.1958). *But see* Admiralty Extension Act, 46 U.S.C. § 740. Conversely, when the alleged tort is committed and injury occurs solely at sea, the federal courts have admiralty jurisdiction. *See, e.g., Nelson v. United States,* 639 F.2d 469, 472–73 (9th Cir.1980) (admiralty jurisdiction extends to negligence in performing hazardous maritime work on board vessel at sea); *Rolph Navigation & Coal Co. v. Kohilas,* 299 F. 52, 55 (9th Cir.1924) (admiralty jurisdiction extends to assault and battery committed on board a vessel at sea).

■ For the tort of defamation to be cognizable in admiralty, its *prima facie* requirements must be met at sea. *See Lamontagne,* 632 F.Supp. at 706. *Accord Foster v. United States,* 156 F.Supp. 421, 423 (S.D.N.Y.1957). The *prima facie* case for tortious libel requires a showing of injury caused by publication of a writing containing false statements. *See Carey v. Piphus,* 435 U.S. 247, 263 n. 18, 98 S.Ct. 1042, 1052, 55 L.Ed.2d 252 (1978) (*citing* 1 F. Harper & F. James, *Law of Torts* §§ 5.9–5.13 (1956); Restatement (Second) of Torts §§ 558, 559, 569–74 (1977); W. Prosser, *Law of Torts* § 112 (4th ed. 1971)). *See also* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser on the Law of Torts* § 113 (5th ed. 1984) ("Prosser & Keeton"). When a tortious publication impugns professional integrity, injury *per se* is established. Prosser & Keeton § 112. Moreover, the tort of libel becomes actionable at the time of publication. *See, e.g., Lamon-*

*tagne,* 632 F.Supp. at 708 (*citing St. Clair v. Righter,* 250 F.Supp. 148, 150 (W.D.Va. 1966) (to determine venue in a defamation action, the place of publication is the last event necessary to render the tort-feasor liable) *and Jaffe v. Dolan,* 264 F.Supp. 845, 848 (E.D.N.Y.1967)). *See generally* Prosser & Keeton § 112. Publication occurs when a third party hears or reads the libelous message. *See generally* Prosser & Keeton § 113; Restatement (Second) of Torts § 577.

■ If Durkin's actions at sea met the *prima facie* requirements for tortious libel, then a case of admiralty jurisdiction has been established under maritime common law. Here, it is uncontroverted that Durkin wrote the alleged libelous statement and conveyed it to at least the telex operator on board the *Passumpsic* for transmission to shore. Such conveyance constitutes publication. *See* Restatement (Second) of Torts § 577, Comment (g) (delivery to telegraph company for transmission is publication of alleged libel); Prosser & Keeton § 113 (same for transmission by postcard or unsealed letter). Since the publicized statement related explicitly to Guidry's professional competence as an Engine Utilityman, injury *per se* was established at the time of publication to the telex operator. Accordingly, all *prima facie* requirements for tortious libel were met at sea on board the *Passumpsic. Cf. Lamontagne,* 632 F.Supp. at 708 (admiralty jurisdiction not conferred because publication, a *prima facie* element of libel, occurred on land).[6]

### B. MARITIME NEXUS

The Supreme Court has adopted an expansive application of the *Executive Jet* requirement that a significant relationship to traditional maritime activity exist. *See Foremost Ins. Co. v. Richardson,* 457 U.S. 668, 672, 102 S.Ct. 2654, 2657, 73 L.Ed.2d 300 (1982).

---

**6.** An application of the rule in *Joshua Hendy* to these facts would be inapposite. *Joshua Hendy* is similar in that a tortious letter was written and read by others on board a vessel. 285 F.2d at 200. However, contrary to the finding in

*Lamontagne,* 632 F.Supp. at 708, *Joshua Hendy* was an action for tortious interference with contractual relations and not an action for libel. 285 F.2d at 200.

The following factors are to be considered to determine whether a significant relationship to traditional maritime activity exists:

(1) traditional concepts of the role of admiralty law;

(2) the function and role of the parties;

(3) the types of vehicles and instrumentalities involved; and

(4) the causation and nature of injury suffered.

*Solano,* 761 F.2d at 1371.

Here, the alleged tortious writing was drafted on board a vessel at sea by ship's personnel in furtherance of engine room operations. The composition of a vessel's crew, particularly engine room personnel, is of paramount importance not only to the smooth sailing of the vessel, but also because personnel decisions affect the safety of other crew members while the vessel is over navigable water. We can envision no function more crucial to the safe operation of a vessel than decisions involving the manning of her engines. A decision regarding the composition of a vessel's personnel by a supervisory member of the crew in the context of operating the engine room is, without doubt, a traditional maritime activity. That the personnel decision was reduced to an alleged tortious writing does not vitiate its maritime flavor.[7] Accordingly, Guidry's claim clearly sounds in admiralty, and would be cognizable under 28 U.S.C. § 1333(1).

### III

While the above can fairly be said to state the general rule with respect to admiralty jurisdiction over the tort of defamation, it still does not answer the question whether admiralty jurisdiction in this case is concurrent with the state courts under the "saving to suitors" clause, or vested in the original and exclusive jurisdiction of the federal district courts. In order to answer that question, we note two critical facts: First, Durkin was at all relevant times a civilian employee of the United States serving aboard a public vessel of the United States; and second, a federal employee may not be sued for an act or omission giving rise to a maritime claim if a remedy is statutorily provided against the United States as his employer. *See* 46 U.S.C. § 745. Because of Durkin's status as a civilian employee of the United States whose act of allegedly defaming Guidry occurred on the high seas, we must examine various statutory waivers of sovereign immunity as possible bases for Guidry's action.

Guidry cites four statutes as possible bases for asserting a claim against Durkin: (1) the Federal Tort Claims Act ("FTCA"), codified at 28 U.S.C. § 2671 *et seq.;* (2) the Federal Employees Compensation Act ("FECA"), codified at 5 U.S.C. § 8101 *et seq.;* (3) the Suits in Admiralty Act ("SIAA"), codified at 46 U.S.C. § 741 *et seq.;* and (4) the Public Vessels Act of 1925 ("PVA"), codified at 46 U.S.C. § 781 *et seq.* These statutes will be addressed in turn.

The FTCA is unavailable to Guidry for the reason that defamation actions are expressly barred by that statute. *See* 28 U.S.C. § 2680(h). Further, the FTCA is unavailable for admiralty claims governed by the SIAA or the PVA. 28 U.S.C. § 2680(d); *Williams v. United States,* 711 F.2d 893, 895 (9th Cir.1983).

Similarly, while the FECA was and is intended to provide an exclusive remedy for all employees of the United States suffering job-related injuries, *see Johansen v. United States,* 343 U.S. 427, 440–41, 72 S.Ct. 849, 857–58, 96 L.Ed. 1051 (1952) (civilian crewman of public vessel), the very nature of the FECA as a workers' compensation statute bars recovery for anything other than injuries (resulting in some form of physical disability) or death.

---

**7.** It should be noted that, because we are dealing with a tort committed on the high seas and not on inland navigable waterways, it is questionable whether the two-pronged analysis of *Executive Jet* is necessary. The Supreme Court has never held that anything more than strict locality applies to torts committed on the high seas. *See, e.g., East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 106 S.Ct. 2295, 2298, 90 L.Ed.2d 865 (1986) (declining to address question whether *Executive Jet* applies to high seas torts).

*See, e.g.,* 5 U.S.C. §§ 8101(5) (defining "injury" as physical harm) and 8102(a)(1) (mandating "disability" or "death" as grounds for recovery).[8] Such is clearly not the case here. Because the FECA is inapplicable to the facts of this case, it is obviously not the exclusive remedy for Guidry's defamation action. *Cf. Newman v. Legal Servs. Corp.,* 628 F.Supp. 535, 543 (D.D.C.1986) (because claim for emotional distress not covered by FECA, FECA not employee's exclusive remedy).

 The two remaining statutes, the SIAA and the PVA, are interrelated. *See* 46 U.S.C. § 742 (incorporating consistent provisions of SIAA into PVA); *United States v. United Continental Tuna Corp.,* 425 U.S. 164, 180–81, 96 S.Ct. 1319, 1328–29, 47 L.Ed.2d 653 (1976) (claims falling outside scope of PVA but within consistent provisions of SIAA are cognizable thereunder).

The PVA, although providing "[t]hat a libel in personam in admiralty may be brought against the United States ... for damages caused by a public vessel of the United States[,]" 46 U.S.C. § 781, had been construed prior to 1960 not to apply to claims of seamen employed on public vessels, as they were already covered by the exclusive provisions of the FECA. *See Johansen,* 343 U.S. at 439–40, 72 S.Ct. at 856–57. Similarly, while the SIAA "gave a broad remedy to seamen on United States *merchant* vessels, [it] did not extend those benefits to seamen on *public* vessels." *Id.* at 433, 72 S.Ct. at 854 (emphasis added).

In 1960 Congress amended the SIAA, eliminating among other changes the "merchant vessel" limitation. 46 U.S.C. § 742. This court has interpreted the 1960 amend-

ments to mean that *all* maritime tort claims involving the United States now fall within the general purview of the SIAA. *Roberts v. United States,* 498 F.2d 520, 525–26 (9th Cir.), *cert. denied,* 419 U.S. 1070, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974). Subsequently the Supreme Court held that all claims involving public vessels that would otherwise fall outside the scope of the PVA but within the parameters of the SIAA are cognizable thereunder. *Continental Tuna,* 425 U.S. at 180–81, 96 S.Ct. at 1328–29.

In *Amell v. United States,* 384 U.S. 158, 86 S.Ct. 1384, 16 L.Ed.2d 445 (1966), the Supreme Court stated, "The Suits in Admiralty Act vests exclusive jurisdiction in the district courts when the suit is maritime in nature." 384 U.S. at 159, 86 S.Ct. at 1385. *Accord Matson Nav. Co. v. United States,* 284 U.S. 352, 356, 52 S.Ct. 162, 164, 76 L.Ed. 336 (1932) (same); *Ashland v. Ling–Temco–Vought, Inc.,* 711 F.2d 1431, 1435 & n. 3 (9th Cir.1983) (accepts without discussion that jurisdiction of district court under SIAA is exclusive); *Continental Tuna,* 425 U.S. at 178, 96 S.Ct. at 1327 (where the SIAA or PVA apply, "[T]he proper forum [is] the admiralty side of the district court"); D. Ingraham, "The Suits in Admiralty Act and the Implied Discretionary Function," 1982 Duke L.J. 146, 157 ("The SIAA and the PVA provide[d] that federal district courts ha[ve] exclusive jurisdiction over any claim against the United States sounding in admiralty"). From the above it follows that, by virtue of their interrelated status, *see Continental Tuna,* 425 U.S. at 180–81, 96 S.Ct. at 1328–29, the SIAA and the PVA together provide original and exclusive admiralty jurisdiction in the United States district courts.[9]

---

**8.** Aside from the statute's inapplicability, we note that section 8105 of the FECA requires that any claim presented under this statute must first be brought before the Department of Labor on a form prescribed by the Secretary of Labor and filed in accordance with that provision. There is nothing in this record to indicate that Guidry had exhausted his administrative remedies under the FECA prior to the filing of the instant action.

**9.** In *Hoiness v. United States,* 335 U.S. 297, 301–02, 69 S.Ct. 70, 72–73, 93 L.Ed. 16 (1948), Justice

Douglas appeared to state that 46 U.S.C. § 742 was not a jurisdictional, but a venue, statute. We do not read *Hoiness* as standing for such a proposition. In that case, the district court dismissed for want of jurisdiction a libel *in personam* brought under section 742 solely for the reason that the libellant had failed to allege such facts as the government's place of business, the parties' residence, etc. In reversing the district court, Justice Douglas correctly pointed out that the government's "place of business" or "residence" was virtually everywhere within the geographic confines of the United States, and

Although there is a wealth of case law, both state and federal, holding that the jurisdiction of the federal district courts under the SIAA and the PVA is exclusive, such language almost invariably occurs when discussing the interplay between the SIAA and the PVA on the one hand, and the Tucker Act (28 U.S.C. § 1346) on the other. Moreover, while the *remedy* afforded by the SIAA is deemed to be exclusive, *see* 46 U.S.C. § 745, nothing in the SIAA at section 742, nor in the PVA at section 782, expressly declares their *jurisdictions* to be exclusively vested in the district courts.

In *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981), the Supreme Court pointed out that a presumption of concurrent state court jurisdiction exists. *Id.* at 478, 101 S.Ct. at 2875. The Court went on to note, however, that

> [T]he presumption of concurrent [state court] jurisdiction can be rebutted by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests.

*Id. Accord Valenzuela v. Kraft, Inc.*, 739 F.2d 434, 435 (9th Cir.1984).

Applying the above analysis to the facts of this case, we note the following: First, Congress declared with reference to the 1960 amendment to 46 U.S.C. § 742 that it "restates in brief and simple language the now existing exclusive jurisdiction conferred on the district courts, both on their admiralty and law sides, over cases against the United States which could be sued on in admiralty if private vessels, persons, or property were involved." S.Rep. No. 1894, 86th Cong., 2d Sess., *reprinted in* 1960 U.S.Code Cong. & Admin.News 3583. Although admittedly involving a construction of the interplay of the SIAA and the PVA with the Tucker Act's conferral of jurisdic-tion in the Court of Claims, nowhere in the legislative history of the 1960 amendment is any reference made to concurrent state court jurisdiction.

Second, nothing in the SIAA nor in the PVA expressly or implicitly refers to state court jurisdiction over claims involving the United States. For example, section 742 of the SIAA expressly states that all such actions "shall be brought" in the federal district courts, and that they may be transferred "to any other district court of the United States."

Third, it is reasonable to assume that Congress intended by enacting the SIAA and the PVA not merely to waive part of the government's sovereign immunity, but to assure that a uniform body of national law would emerge thereby. Such can only occur if there exists but a single forum for entertaining and construing such claims. Thus, in *Johnson v. United States Shipping Bd. Emergency Fleet Corp.*, 280 U.S. 320, 327, 50 S.Ct. 118, 120, 74 L.Ed. 451 (1930), the Supreme Court stated:

> [P]roviding remedies to be exclusive in admiralty would not serve substantially to establish uniformity, if suits under the Tucker Act and in the Court of Claims be allowed against the United States *and actions at law in state* and federal courts be permitted ... for enforcement of the maritime causes of action covered by the [Suits in Admiralty] Act (emphasis added).

From the above we conclude that, in the interests of national uniformity, Congress intended to limit the jurisdiction of claims asserted under the SIAA or the PVA to the exclusive jurisdiction of the federal district courts.[10]

## IV

▇▇▇ Since the state courts lack jurisdiction over such matters, the California state court lacked subject matter jurisdiction

---

that the failure of a libellant to make the appropriate allegations was not a matter of jurisdiction, but of venue. *Id.* Thus, the failure to make the allegations of residence or place of business required under section 742 should be regarded not as a ground for dismissal for lack of jurisdiction, but as a reason justifying a trans-

fer to another venue. *See, e.g., Podgorski v. United States,* 183 F.2d 421, 422 (3d Cir.1950).

**10.** Implicit in the above analysis is that Congress intended the "saving to suitors" clause of 28 U.S.C. § 1333(1) not to apply to actions under the SIAA or PVA.

**1474**

over Guidry's claims against Durkin and, *a fortiori,* the district court acquired no subject matter jurisdiction over those claims upon removal. *See, e.g., Armstrong v. Alabama Power Co.,* 667 F.2d 1385, 1388 (11th Cir.1982) (lack of subject matter jurisdiction in state court over third-party claim filed under SIAA meant district court acquired no derivative jurisdiction over claim upon removal); *see also Cove Shipping, Inc. v. Doss,* 485 So.2d 1326, 1327 (Fla.App. 1986) (state courts lack subject matter jurisdiction over damage claims asserted against agent of United States for harm sustained on public vessel).[11]

We conclude that, but for Durkin's status as an employee of the federal government employed on a public vessel, Guidry could have brought his action either in federal district court as a maritime tort under 28 U.S.C. § 1333(1), or in state court under the "saving to suitors" clause as a general common law tort. However, Durkin was at all relevant times an employee of the federal government; he was employed on a public vessel on the high seas; and it was his actions on that public vessel while on the high seas that gave rise to Guidry's claim. Because of that unique combination of facts, Guidry could have brought suit only under the provisions of the PVA and the SIAA, both of which fall within the original and exclusive admiralty jurisdiction of the federal district courts. Because Guidry brought suit in a forum that lacked subject matter jurisdiction, the removal of that action to what would otherwise have been the proper forum failed to confer the necessary subject matter jurisdiction over Guidry's suit.

## CONCLUSION

Our voyage through admiralty now comes to a lull; seaman Guidry's cause cannot be heard on this tack. The decision of the district court is REVERSED and this case is REMANDED with instructions to DISMISS the complaint without prejudice.

---

**11.** It should be noted that we do not here decide the question whether Durkin was acting within the scope and authority of his employment as an employee (and, arguably, as an officer) of the United States, as that issue relates solely to the defense of absolute immunity. The only question considered for review is whether the district court had subject matter jurisdiction over the removed state court action, and that question hinges on whether a statutory remedy available to Guidry could be pursued within the exclusive or concurrent admiralty jurisdiction of the federal courts. Accordingly, we hold only that Guidry, in filing his claim in state court, filed his action in an inadequate forum. We offer no opinion on his prospects had he filed, or if he were to refile, in the district court under the PVA and the SIAA.