**J. LAURITZEN A/S; Lauritzen Reefers A/S, Plaintiffs–Appellants,**

v.

**DASHWOOD SHIPPING, LTD., Defendant–Appellee.**

No. 94–56104.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 7, 1995.

Submission Deferred April 21, 1995.

Resubmitted Aug. 30, 1995.

Decided Sept. 7, 1995.

Alan Nakazawa and B. Alexander Moghaddam, Williams, Woolley, Cogswell, Nakazawa & Russell, Long Beach, CA, for plaintiffs-appellants.

Dimitrios P. Biller, Pillsbury, Madison & Sutro, Los Angeles, CA, for defendant-appellee.

Before: BROWNING and BEEZER, Circuit Judges, and HAGGERTY, District Judge.*

BEEZER, Circuit Judge:

J. Lauritzen A/S and Lauritzen Reefers A/S ("Lauritzen") appeal the district court's dismissal of their maritime attachment action for lack of admiralty subject matter jurisdiction. Lauritzen contends that the district court erred in concluding it lacked admiralty jurisdiction over the alleged tortious interference with a contract. Dashwood Shipping Ltd. ("Dashwood") argues that this court lacks jurisdiction to hear the appeal because of the district court's release of the attachment against the vessel. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm.

---

* The Honorable Ancer L. Haggerty, United States District Judge for the District of Oregon, sitting by designation.

## I

Lauritzen, a shipping company, entered into a Reefer Pool Agreement with Uni Reefer, the former owner of the M/V BELINDA. According to the agreement, the M/V BELINDA, with other reefer vessels, would be managed and operated by Lauritzen as part of a pool. The pool agreement provided that various owners of vessels would allow Lauritzen to manage the commercial shipping operations of the vessels and share the trading revenues. The pool agreement restricted sale of the vessels and operation outside the pool.

On May 11, 1994, Uni Reefer sold the M/V BELINDA to Dashwood. Dashwood notified Lauritzen of its intention to withdraw the vessel from the pool. At the time of the sale, the M/V BELINDA was en route to Ecuador to load cargo bound for Chile, pursuant to a cargo agreement between Lauritzen and a charterer. Lauritzen advised Dashwood of the restrictions on the sale of the vessel in accordance with the pool agreement and requested that Dashwood not interfere with the vessel's commitment to the charter in Ecuador. Dashwood issued new sailing instructions and diverted the vessel from its course. The vessel is now operated in another worldwide reefer pool not managed by Lauritzen.

Lauritzen filed the present action in district court against Dashwood for tortious interference with contract. Pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims to the Federal Rules of Civil Procedure, Lauritzen moved for, and was granted, an order attaching the vessel. The district court subsequently granted Dashwood's motion to vacate the attachment and dismiss for lack of subject matter jurisdiction and released the attachment of the vessel. The district court denied Lauritzen's request to stay the order vacating the attachment pending this appeal.

## II

■ Dashwood contends that we lack jurisdiction over this appeal because the district court vacated the attachment. The procedure for maritime attachment in an in personam action is governed by Rule B. The rule provides, in part:

> With respect to any admiralty or maritime claim in personam a verified complaint may contain a prayer for process to attach the defendant's goods and chattels, or credits and effects in the hands of garnishees to be named in the process to the amount sued for, if the defendant shall not be found within the district. . . . Supplemental process enforcing the court's order may be issued by the clerk upon application without further order of the court.

Fed.R.Civ.P.Supp. Rules for Certain Admiralty and Maritime Claims B(1). We have characterized Rule B attachment as *quasi in rem* jurisdiction because jurisdiction is derived solely from the attachment of the property of the defendant. *Teyseer Cement Co. v. Halla Maritime Corp.*, 794 F.2d 472, 477 (9th Cir.1986). The purpose of maritime attachment is both to obtain jurisdiction over the respondents in personam through their property, and to assure satisfaction of any judgment. *Polar Shipping Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627, 636–37 (9th Cir.1982).

Dashwood asserts that the district court's order vacating the attachment deprived us of jurisdiction. Until recently, this may have been so. In *Republic National Bank v. United States,* —— U.S. ——, 113 S.Ct. 554, 121 L.Ed.2d 474 (1992), however, the Supreme Court examined a similar issue in the context of a civil *in rem* forfeiture proceeding. Recognizing that *in rem* forfeiture developed in the admiralty arena, the Court concluded that release of the res would not deprive the court of jurisdiction. *Republic,* —— U.S. at —— – ——, 113 S.Ct. at 559–60. The Court recognized that "it long has been understood that a valid seizure of the res is a prerequisite to the *initiation* of an *in rem* civil forfeiture proceeding." *Id.* at ——, 113 S.Ct. at 557 (emphasis in original). But, the Court determined, maintaining the status quo "is not a general prerequisite to the maintenance of jurisdiction. . . . [and] [n]othing in the nature of *in rem* jurisdiction suggests a reason to treat it differently." *Id.* at ——, 113 S.Ct. at 559. We have extended that analysis to the admiralty arena and con-

cluded that release of the attachment in a Rule B action does not destroy jurisdiction. *Stevedoring Services of Am. v. Ancora Transport,* 59 F.3d 879, 883 (9th Cir.1995).

■ It is undisputed that the district court's jurisdiction was proper at the time of the initiation of the action. Pursuant to the holdings of *Stevedoring Services* and *Republic* that jurisdiction, once obtained, will not be defeated by a change in circumstances, we conclude that the removal of the attachment does not deny us jurisdiction over the action.

## III

■ Turning to the merits of the action, the district court dismissed the complaint for lack of subject matter jurisdiction. The district court concluded that the complaint failed to allege a tort within the court's admiralty jurisdiction. Applying the tests for admiralty jurisdiction, the court concluded that the alleged actions by Dashwood failed the locality requirement of the test. We review de novo the existence of subject matter jurisdiction. *Nike, Inc. v. Comercial Iberica De Exclusivas Deportivas,* 20 F.3d 987, 990 (9th Cir.1994).

■ In *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454 (1972), the Supreme Court, in the context of aviation torts, concluded that the test for admiralty jurisdiction requires both that the injury occur on navigable waters and that the activity have some connection to maritime commerce. In *Foremost Ins. Co. v. Richardson,* 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982) and *Sisson v. Ruby,* 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990), the Court applied the *Executive Jet* formulation outside the context of aviation torts and required that all maritime torts have a substantial relationship to traditional maritime activity. There is no doubt, however, that whether the injury occurred on navigable waters remains part of the inquiry in determining admiralty jurisdiction. *See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* —— U.S. ——, ——, 115 S.Ct. 1043, 1048, 130 L.Ed.2d 1024 (1995); *Whitcombe v. Stevedoring Servs. of Am.,* 2 F.3d 312, 314 n. 1 (9th Cir.1993); *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.,* 982 F.2d 363, 366 (9th Cir.1992).

■ Neither party disputes that the action at issue has a substantial connection to maritime commerce.[1] Rather the dispute centers on the locus test, or whether the injury occurred on navigable waters. Generally, "the tort 'occurs' where the alleged negligence took effect." *Executive Jet,* 409 U.S. at 266, 93 S.Ct. at 504; *Solano v. Beilby,* 761 F.2d 1369, 1371 (9th Cir.1985) ("[C]ourts have traditionally defined the locus of the tort as the place where the injury occurs."). We have recognized that admiralty jurisdiction is lacking where the tort occurs, or the negligence took effect, solely on land. *Guidry v. Durkin,* 834 F.2d 1465, 1469 (9th Cir.1987). Further, for certain torts to be cognizable in admiralty the *prima facie* elements of the tort must occur at sea. *Id.* (requiring *prima facie* elements be met solely at sea for a defamation tort).

The district court concluded that Dashwood's interference with the pool agreement by purchasing the vessel and operating it outside the pool with knowledge of the agreement or with the intent to cause the breach of the agreement failed to meet the locus element of the test. The district court concluded that the tortious interference "took effect" on land when the vessel was sold in violation of the agreement and the tort was complete. Relying on *Kuehne & Nagel v. Geosource, Inc.,* 874 F.2d 283, 288–89 (5th Cir.1989), the district court concluded that any subsequent injury that occurred on navigable waters was too remote to meet the locus requirement.

---

1. In determining whether a substantial relationship to maritime activity exists, we must first consider whether "the general features of the type of incident involved" have a "potential disruptive impact on maritime commerce," and second, "whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity."

*Grubart,* —— U.S. at ——, 115 S.Ct. at 1048 (quoting *Sisson,* 497 U.S. at 363, 364 n. 2, 110 S.Ct. at 2896, 2896 n. 2) (quotation marks omitted). We conclude that the interference with a pool agreement involving the operation and management of reefer vessels is substantially related to commercial maritime activity.

In *Kuehne*, the plaintiffs alleged a tort of fraudulent inducement to contract in seeking admiralty jurisdiction. 874 F.2d at 288. The Fifth Circuit reasoned that the misrepresentations by the defendant to induce the plaintiffs into signing the contract occurred on land. *Id.* at 289. The tort occurred when the plaintiffs where induced to sign the contracts. The subsequent injury caused at sea to the cargo, the court concluded, was too remote to the actual tortious conduct. *Id.*

As in *Kuehne*, the district court correctly concluded that the tort was completed on land. The Restatement of Torts provides:

> One who intentionally and improperly interferes with the performance of a contract ... by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Restatement (Second) of Torts § 766 (1965). *See Furness Withy (Chartering) Inc. v. World Energy Systems Assocs. Inc.*, 772 F.2d 802, 807 (11th Cir.1985) (applying Restatement § 766 in an admiralty action), *cert. denied*, 489 U.S. 1013, 109 S.Ct. 1124, 103 L.Ed.2d 186 (1989). Paragraph 4.04 of the pool agreement limited the sale of the vessel to a member of the pool or a person approved by the Pool Members Committee. The pool agreement also required that the approved buyer of the vessel become a member of the pool. The sale of the M/V BELINDA to Dashwood violated the agreement since Dashwood was neither a member of the pool nor approved by the Committee. Presuming Dashwood entered into the sale agreement intentionally and with knowledge of the pool agreement, those actions took place solely on land.

█ The pool agreement also provided for liquidated damages in the amount of $500,000 in the event of its breach. In its complaint, Lauritzen's claim for damages against Dashwood specifically includes the $500,000 in damages which are provided in the event of a breach of the pool agreement. As with the sale of the vessel, this portion of the claimed damages arose solely on land at the time of the breach and was unaffected by subsequent actions taken by Dashwood. It is clear that all the *prima facie* elements of the alleged tortious interference with the pool agreement occurred solely on land. The district court correctly concluded that admiralty jurisdiction is lacking.

█ Lauritzen urges that we conclude that the locus requirement was met by applying the "impact" test adopted by the First Circuit in *Carroll v. Protection Maritime Ins. Co.*, 512 F.2d 4 (1st Cir.1975). In *Carroll*, the First Circuit construed the language of *Executive Jet* to establish an exception to the locality test by stating that locality would be satisfied if the impact of the tort was felt on navigable waters. *Id.* at 9. The *Carroll* court concluded that the tortious interference with seamen employment contracts was a maritime tort because the impact of the tort was felt primarily on navigable water. The strong weight of the case law, however, persuades us that the traditional inquiry of locality continues to control. *See, e.g., Mink ex rel Insur. Co. of N. Am. v. Genmar Indus.*, 29 F.3d 1543, 1545 (11th Cir.1994); *Whitcombe*, 2 F.3d at 314. We decline to broaden that inquiry in this circuit. *See Guidry*, 834 F.2d at 1469 (recognizing for defamation tort that no admiralty jurisdiction exists where tort occurred solely on land); *Clinton v. International Org. of Masters, Mates & Pilots*, 254 F.2d 370, 372 (9th Cir.1958) (holding that tortious interference with contract must occur on navigable waters to be cognizable in admiralty); *Clinton v. Joshua Hendy Corp.*, 285 F.2d 199, 200 (9th Cir.1960).[2]

**AFFIRMED.**

█

---

**2.** Lauritzen also urges admiralty jurisdiction pursuant to *Carroll* on the alternative grounds that tortious interference with a maritime contract must be a maritime tort. We refuse to find a maritime tort absent the traditional inquiry into both the locality of the tort and its connection to maritime commerce. We note that even *Carroll*,

while redrafting the traditional locality analysis,

recognized the inquiry of *Executive Jet.*