**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

WOODLANDS LIMITED; INTERNATIONAL
CAPITAL EQUIPMENT, LIMITED;
WOODLINES SHIPPING, LIMITED,
Plaintiffs-Appellants,

v.

NATIONSBANK, N.A.,                                      No. 97-1813
Defendant-Appellee,

and

WESTWOOD INSURANCE COMPANY,
LIMITED,
Defendant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Catherine C. Blake, District Judge.
(CA-96-3158-CCB)

Argued: January 27, 1998

Decided: September 23, 1998

Before ERVIN and MICHAEL, Circuit Judges, and
BRITT, Senior United States District Judge
for the Eastern District of North Carolina,
sitting by designation.

_____

Dismissed by unpublished opinion. Judge Ervin wrote the opinion, in
which Judge Michael joined.*

_____

*Senior Judge Britt heard oral argument in this case but recused him-
self from consideration prior to the time the decision was filed. The deci-
sion is filed by a quorum of the panel. 28 U.S.C.§ 46(d).

**COUNSEL**

**ARGUED:** John Stephen Simms, GREBER & SIMMS, Baltimore, Maryland, for Appellants. Kimberly Lynn Limbrick, MILES & STOCKBRIDGE, P.C., Baltimore, Maryland, for Appellee. **ON BRIEF:** Vincent J. Columbia, Jr., GREBER & SIMMS, Baltimore, Maryland, for Appellants. Jefferson V. Wright, E. Hutchinson Robbins, MILES & STOCKBRIDGE, P.C., Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

ERVIN, Circuit Judge:

This admiralty case stems from a dispute between a shipping company, Woodlands, Ltd. ("Woodlands"), and its maritime insurer, Westwood Insurance Company, Ltd. ("Westwood"), which refused to pay an insurance claim submitted by Woodlands for damage to one of its ships. As a result of Westwood's failure to pay, Woodlands filed suit against Westwood in several courts. Woodlands appeals a decision from the district court in Maryland, in which it had filed a quasi in rem in an attempt to garnish Westwood's bank account in Virginia. The district court dismissed the claim for lack of jurisdiction and released the garnishment, which had issued against NationsBank in Baltimore. Woodlands appeals the district court's decision and also argues that NationsBank should replace funds it inadvertently released during the pendency of the garnishment order. Westwood is no longer a viable entity and has not appeared before us. NationsBank, however, has filed a brief as garnishee-appellee in order to defend its premature release of the funds at issue. Woodlands also challenges NationsBank's standing to participate in the appeal.

We dismiss the case as moot because we have no power to grant the relief sought by Woodlands.

2

I.

Westwood Insurance Company, an Antigua corporation with a United States office in Charlottesville, Virginia, issued Woodlands and its affiliates, International Capital Equipment, Ltd. and Wood-lines Shipping, Ltd., a marine insurance policy for the period February 26, 1995 to February 26, 1996. In December 1995, Woodlands alleges it incurred a loss; subsequently Woodlands claimed coverage under the policy. Westwood ultimately denied payment on the claim.

As a result of Westwood's failure to pay, Woodlands filed virtually identical suits nearly simultaneously in United States District Court for the Eastern District of Virginia (September 18, 1996), J.A. at 60-68; United States District Court for the District of Delaware (September 20, 1996), J.A. at 71-82; and United States District Court for the District of Maryland (October 8, 1996), J.A. at 6-17. The Delaware and Maryland suits differed from the Virginia suit in that each contained an assertion of quasi in rem jurisdiction and correlative prayers for garnishment relief under Supplemental Rule B(1) of the Federal Rules of Civil Procedure,[1] while the Virginia suit sought an adjudication on the merits of Woodlands' claim. [2] Bringing suit in Maryland and Delaware gave Woodlands the advantage of attaching any of Westwood's property or debts present in the district because Supplemental Rule B(1) permits such attachment if an admiralty defendant, in this case Westwood, is not present in the district and therefore not subject to the district's personal jurisdiction.

In Maryland, Woodlands sought to garnish Westwood's checking account with NationsBank. The account itself had been opened and maintained in Charlottesville. The district court issued the garnishment writ, which was served on NationsBank at its Baltimore branch office on October 9, 1996.

_____

[1] Supplement Rule B provides as follows: "With respect to any admiralty or maritime claim in personam a verified complaint may contain a prayer for process to attach the defendant's goods and chattels, or credits and effects in the hands of garnishees to be named in the process to the amount sued for, if the defendant shall not be found within the district."
[2] The record does not reflect whether the Virginia district court ever decided the merits of Woodlands' case.

3

NationsBank answered the garnishment writ, indicating that the account in Charlottesville contained $50,375.97, and froze the assets. J.A. at 20. Westwood, still extant at the time, answered Woodlands' claim and moved to quash the garnishment writ, arguing that the Charlottesville account was outside the Maryland court's jurisdiction. The district court granted Westwood's motion on the ground that the two NationsBank branches were "separate entities" such that an account opened and maintained in one branch could not be reached through service on a separate branch.

The Maryland district court declined to stay the order, so Nations-Bank released the funds in the account. In fact, NationsBank had inadvertently released a substantial portion of the funds prior to the lifting of the garnishment order. The account currently contains approximately $1,000.

While the Maryland action was proceeding, Woodlands obtained a default judgment in the suit it had filed in federal district court in Delaware. The Delaware suit had been premised not on the NationsBank account, but on the theory that Westwood had a managing agent in Delaware that might have garnishable debts owing to Westwood and subject to the Delaware district court's jurisdiction. The record does not reflect that Woodlands was able to garnish any property belonging to Westwood in Delaware, but it did obtain a default judgment. Woodlands requested and received a court order from federal district court in Virginia implementing the Delaware court's order and garnishing the funds remaining in the Charlottesville account. This garnishment order took effect five days after the Maryland district court lifted its garnishment order.**3**

_____

**3** The parties did not supplement the record with documents showing that the Virginia district court issued a garnishment order, based on the Delaware district court's default judgment, that was then levied against the Charlottesville account. Woodlands did not, however, refute Nations-Bank's assertion that garnishment papers were served in Virginia or dispute the accuracy of the date they attached, and we therefore assume the service location and date to be true. The only documents in the record purporting to act as garnishment papers arising from the Delaware default judgment were issued by the district court in Maryland and were directed at NationsBank in Baltimore. Supplemental Appendix at 7-15.

4

On appeal, Woodlands contends that the Maryland district court had jurisdiction over the bank account and that NationsBank should be liable for its failure to honor the garnishment writ, while it was in force, should we reverse the district court's decision. Woodlands also contends that NationsBank lacks standing to argue in this court by virtue of its status as a mere garnishee and because it did not participate in the proceedings at the district court.

NationsBank suggests that Westwood's dissolution and the Delaware district court's garnishment order, which currently governs the funds remaining in Westwood's account, renders our review moot.

II.

Disputes over maritime insurance fall within the admiralty jurisdiction of the federal courts. New England Marine Ins. Co. v. Dunham, 78 U.S. (11 Wall.) 1 (1871). The district court therefore had subject matter jurisdiction over this case under 28 U.S.C.§ 1333(1). One of the primary issues on appeal is whether the district court properly exercised jurisdiction. Before we may examine that question, however, we must determine whether NationsBank has standing and whether we may properly exercise our appellate jurisdiction over a case that may have become moot.

III.

We first address Woodlands' challenge to NationsBank's standing to appear in the case. Woodlands contends that as a mere garnishee, NationsBank lacks the "requisite stake in the outcome" of the litigation to participate in the case. See, e.g., Rohm & Haas Texas, Inc. v. Ortiz Brothers Insulation, Inc., 32 F.3d 205 (5th Cir. 1994) (party must demonstrate "actual" and "direct" interest in order for the party to have standing on appeal); Nationwide Mut. Fire Ins. Co. v. Eason, 736 F.2d 130, 134 (4th Cir. 1984) (challenge to bankruptcy court's disposition must be made by those with requisite stake in the outcome).

We do not agree that NationsBank lacks standing to appear in this case. Should we decide the case in Woodlands' favor, we could order

5

NationsBank to replace the funds it inadvertently released while Westwood's bank account was under a garnishment order. See, e.g., United States v. Harkins Builders, Inc., 45 F.3d 830, 833 (4th Cir. 1995) (under Virginia law, garnishee may be held liable for value of property owned by judgment debtor); Flat Iron Mac Assocs. v. Foley, 600 A.2d 1156, 1161-62 (Md. App. 1992) (under Maryland law, "garnishee is liable for the value of the debtor's property which came into her hands from the time she was served with the writ until the time of the hearing, and a judgment in personam will be rendered against the garnishee for any deficiency."). We therefore believe that Nations-Bank has the "requisite stake in the outcome" of the case to participate in the appeal. This determination accords with the conduct of other admiralty cases. See, e.g., Victrix Steamship Co. v. Salen Dry Cargo A.B., 825 F.2d 709 (2d Cir. 1987) (garnishee bank participated in suit determining that Swedish bankruptcy proceeding took precedence over U.S. attachment so that funds should be transferred to Swedish bankruptcy trustee); Reibor Int'l Ltd. v. Cargo Carriers Ltd., 759 F.2d 262 (2d Cir. 1985) (garnishee bank participated in case deciding whether garnishment writ was effective when served before garnishee came into possession of property).

IV.

Having disposed of Woodlands' argument that NationsBank lacks standing, we must determine whether the case before us has become moot. Article III of the United States Constitution extends the "judicial power" of the United States only to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. In order to invoke the judicial power of the federal courts, a party must have standing to sue: "the party must have suffered an actual or threatened injury in fact; the injury must have been caused by defendant's complained-of conduct; and the injury must be redressable by the relief sought." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Nos. 97-1246, 97-1261, 1998 WL 394993, at *1 (4th Cir. July 16, 1998); see also Steel Co. v. Citizens for a Better Env't, 118 S. Ct. 1003, 1016-17 (1998). The doctrine of standing often implicates that of mootness; the three standing elements must exist throughout the pendency of the litigation, otherwise the case becomes moot. See United States Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980) (explaining mootness has been described as standing set in a time frame).

6

In this case, we must determine whether the injury of which Woodlands complained remains redressable by any action we might take. Woodlands currently has a garnishment order on the funds remaining in the account. Superseding the Delaware's court's order would have no purpose unless we were able to restore the monies previously held in the disputed account.

Theoretically, two possible sources exist for recovery of the depleted funds: Westwood and NationsBank. Woodlands requests that we order NationsBank to replace the funds it erroneously released while the account was subject to the garnishment order of the Maryland district court. Woodlands understandably seeks recompense from NationsBank, because at this point Westwood Insurance appears not only judgment-proof but nonexistent as an entity. **4**

In a Rule B attachment case, jurisdiction is derived from the attachment of the property of the defendant. A Rule B attachment case is, therefore, a quasi in rem action instituted for the purpose of (1) asserting jurisdiction over the defendant in personam through the property and (2) to assure satisfaction of any judgment. J. Lauritzen A/S v. Dashwood Shipping, Ltd., 65 F.3d 139, 141 (9th Cir. 1995).

In a case premised on quasi in rem or in rem jurisdiction, we must first consider whether we retain jurisdiction over the case even though the res, which initially conferred jurisdiction on the court, has been released. The Supreme Court has resolved that question and determined that the res, in and of itself, does not deprive us of jurisdiction to hear the case or render the case moot. Republic Nat'l Bank v. United States, 506 U.S. 80 (1992). In Republic National Bank, the Court held that the release of the res that originally supported an assertion of jurisdiction did not deprive the appellate court of jurisdiction, even if the appellant failed to post a supersedeas bond and neither the district nor the appellate court stayed the release of the res pending appeal. Id. at 88-89. Republic National Bank was a civil for-

_____

**4** Counsel for Westwood stated that their representation of the client had ended once the district court entered its order. Some time prior to the entry of the district court's order, all of their efforts to reach Westwood's sole officer and President failed, and Westwood had apparently ceased to exist. Letter to Clerk of Court, August 11, 1997.

feiture case involving a house acquired with the proceeds of narcotics trafficking. After the United States Marshal seized the property, the Republic National Bank of Miami asserted an 80 percent mortgagor's lien interest. The district court judge denied the bank's claim, the house was sold, and the proceeds were deposited in the United States Treasury. On appeal, the Eleventh Circuit determined that it lacked jurisdiction because the attachment order had been lifted and the res had been deposited in the Treasury. The Supreme Court concluded that an appeals court is not divested of jurisdiction "by the prevailing party's transfer of the res from the district." 506 U.S. at 80.

Civil forfeiture proceedings, like those in Republic National Bank, are modeled on admiralty proceedings. 506 U.S. at 84. The Ninth Circuit has extended the Republic National Bank jurisdictional rule to an admiralty action. Stevedoring Servs. v. Ancora Transp., N.V., 59 F.3d 879, 882 (9th Cir. 1995).

An important component to the Republic National Bank decision was the Court's determination that the appellant could still recover the disputed funds, which had since been deposited in the U.S. Treasury. Id. at 85. The Court noted that there may be an exception to the rule that jurisdiction, once vested, is not divested,"where the release of the property would render the judgment `useless' because `the thing could neither be delivered to the libellants, nor restored to the claimants.'" Id. (quoting United States v. The Little Charles, 26 F. Cas. 979 (C.C. Va. 1818 (No. 15,612)).

In Ancora Transport, the Ninth Circuit determined it retained jurisdiction over the res, and could continue to review the case although the defendants were out of the district court's control, but the court concluded that the district court had properly vacated the writ of garnishment and therefore affirmed the release of the garnished funds. 59 F.3d at 883. The Ancora Transport court did not consider whether it had any means of granting the relief requested had the appellant prevailed.

This case presents an unusual circumstance, due to Westwood's demise, in that the threshold question before us is whether we have the capability of granting relief. We are mindful of the Court's suggestion in Republic National Bank that jurisdiction may in fact be

8

divested if the court may issue only a "useless" order. The funds released by the district court's order are unrecoverable from the defendant, Westwood, because the entity has effectively ceased to exist. Thus, even were we to consider the case on the merits and restore the district court's garnishment order, we could not retrieve the funds from Westwood. If our only option were to order recovery of the funds from Westwood, this case would be moot.

This conclusion leaves us with the question of whether we may order NationsBank to restore the funds it improperly released during the pendency of the garnishment order. This decision is made more difficult by the fact that Westwood actually ceased to exist even before the entry of the district court's order. Therefore, although the record is unclear on this point, we may infer that all of the funds, save the remaining $1,000, were withdrawn from the account during the pendency of the garnishment order. Had NationsBank not been negligent, therefore, the funds may well have been in the account at the time of the attachment made through the Delaware court's order, five days after the release of the Maryland court's order, and Woodlands would have the relief it seeks.

Woodlands' argument is appealing, but we believe that Nations-Bank's negligence obscures the proper result. Once the Maryland district court's order was lifted, Woodlands no longer had any claim to the monies in the account, regardless of how little or how much was left in it, and the monies then belonged to Westwood. When Woodlands made its new claim, five days later, the account balance stood much lower. We therefore conclude that we may not, in this case, order NationsBank to restore the monies.

V.

The doctrine of mootness requires that this court be able to give redress for the injury of which Woodlands complained. Friends of the Earth, 1998 WL 394993 at *2. We are unable in this case to give relief to Woodlands. We therefore conclude that this case has become moot and we dismiss the appeal on that ground.

DISMISSED

9